# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WISCONSIN

In re   MICHAEL R. HANSEN &
       MARY BETH HANSEN

       Debtors,                      Case No: 15-28166-beh

RAYMOND HOLDEN, &
TALON EXECUTIVE SEARCH GROUP, LLC

                                         Adversary No:_____

                                         Chapter 7

       Plaintiffs,

v.

MICHAEL R HANSEN &
MARY BETH HANSEN

       Defendants.

## ADVERSARY COMPLAINT CHALLENGING DEBTORS' DISCHARGE OF CERTAIN DEBTS

Plaintiffs Raymond Holden and Talon Executive Search Group, LLC by their attorneys, Gutglass, Erickson, Bonville and Larson, S.C., as and for their Complaint Challenging Dischargability of Certain Debts, state as follows:

### JURISDICTION AND VENUE

1. This adversary proceeding is brought under authority provided by F.R.B.P. 7001.

2. This court has jurisdiction under 11 U.S.C. § 523 and 28 U.S.C. § 1334. This adversary proceeding relates to this case under Chapter 7 of the Bankruptcy Code, now pending in this court.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I)-(J)

## PARTIES

5. The debtor-defendant, Mary Beth Hansen ("Mrs. Hansen") is an adult resident of Wisconsin, residing at W222 N2281 Glenwood Lane, Waukesha, Wisconsin.

6. The debtor-defendant, Michael R Hansen ("Mr. Hansen") is an adult resident of Wisconsin, residing at W222 N2281 Glenwood Lane, Waukesha, Wisconsin.

7. At all times relevant, Mrs. Hansen and Mr. Hansen were and continue to be spouses.

8. Plaintiff Raymond Holden ("Holden") is an adult resident of Wisconsin, residing at 250 Nixon Avenue, Village of Hartland County of Waukesha, Wisconsin.

9. Talon Executive Search Group, LLC ("Talon") was a Wisconsin Limited Liability Company with Paul R. Erickson as registered agent and its principal office located at all relevant times at 11575 Theodore Trecker Way, West Allis, Wisconsin.

## GROUNDS FOR NONDISCHARGABILITY OF CERTAIN DEBTS

10. Plaintiffs object to Debtors' discharge pursuant 11 U.S.C. 523(a)(4): Defalcation While In Fiduciary Capacity.

11. Plaintiffs object to Debtors' discharge pursuant 11 U.S.C. 523(a)(4): Embezzlement

12. Plaintiffs object to Debtors' discharge pursuant 11 U.S.C. 523(a)(4): Larceny

13. Plaintiffs object to Debtors' discharge pursuant 11 U.S.C. 523(a)(6): Willful and Malicious Injury.

## FACTS

14. At all times relevant, Holden, was a majority shareholder, principal and owner of Eagle Technology Group ("Eagle") and sole member of Talon.

15. Mr. Hansen was employed by Eagle from 2003 through the sale of its assets in August,

2

2011.

16. Mr. Hansen began employment at Talon in April 2010, and was an Officer of the company, holding the title Secretary/Treasurer.

17. Talon was a startup company in 2010 and hired Mr. Hansen part-time to handle payroll and bookkeeping duties.

18. Mr. Hansen agreed to perform the part-time duties (approximately 10-15 hours per week) for Talon and was compensated $300 per biweekly pay period.

19. Mr. Hansen's employment at Talon was independent of his employment at Eagle, nor was his compensation linked between the two.

20. Holden became gravely ill in 2010, subsequently enduring more than a dozen surgeries to treat cancer and gangrene in the years following. As a result, Holden was physically and psychologically unable to work until late 2012.

21. When Holden was able to return to work, though still seriously ill, he learned that Talon was having financial problems.

22. While Holden was unavailable, Mr. Hansen, as Secretary, Treasurer and accountant had been left in a position of trust with Talon. Upon information and belief, Mr. Hansen had intimate knowledge of the companies' finances, bank accounts, books and records of the company.

23. With Holden unable to supervise the company, Mr. Hansen assumed complete control of Talon's financial affairs.

24. Mr. Hansen had access to the companies' letterhead, checks, and a stamp bearing Holden's signature.

25. Mr. Hansen entered into contracts with vendors, drafted and negotiated checks, made

payments, and managed payroll.

26. Mr. Hansen was responsible for making trust fund tax payments to the Wisconsin Department of Revenue ("WDOR") and the Internal Revenue Service, as well as tendering other payments such as spousal support withheld from employees' paychecks to the appropriate agencies.

27. In the fall of 2011, without the knowledge or consent of Talon or Holden, Mr. Hansen secretly added his spouse Mrs. Hansen to Talon's payroll for a fictitious position.

28. At no time did Mrs. Hansen perform work for Talon nor and did she come to the office, yet collected $935.00 per pay period, more than three times the amount agreed to as compensation for her husband and received health insurance contributions from Talon.

29. Upon learning of Mrs. Hansen's fictitious employment, Holden demanded that Mr. Hansen remove Mrs. Hansen from the payroll immediately.

30. Mr. Hansen subsequently removed Mrs. from the payroll, but in or around July of 2012, Hansen conspired with Mrs. Hansen to file an application for unemployment compensation, and falsely reported to the Department of Workforce Development (DWD) that Mrs. Hansen had worked as an "administrative assistant."

31. Because Holden was so ill, he was unaware that Mrs. Hansen had applied for and received unemployment compensation until early 2013.

32. Holden then contacted the DWD to try to put a stop to the unemployment benefits, but was told by an investigator that Mrs. Hansen had informed the Department that she had been "stuffing envelopes at home" for 10 to 12 hours per week during her of employment with Talon.

33. Mr. Hansen later claimed that Mrs. Hansen worked at home performing "piddly type stuff

4

Case 15-02485-beh    Doc 1    Filed 10/16/15    Page 4 of 10

I didn't want to do" such as bank reconciliation and typing labels for 10 to 12 hours per week. Nonetheless, Mrs. Hansen received approximately $21,505.00 in wages from Talon.

34. Mr. Hansen has admitted that Mrs. Hansen was put on the payroll at Talon so that she could obtain company health insurance benefits.

35. Holden did not authorize Mrs. Hansen's employment by Talon and was not entitled to health insurance benefits.

36. Talon incurred approximately $10,575.57 in health insurance contributions attributed to Mrs. Hansen's employment scheme.

37. Mr. Hansen secretly and without authorization raised his compensation at Talon for his part time job from $300.00 every 2 weeks to $2,000.00 then later to $2,200.00 and then $2,400.00.

38. Upon information and belief, the unauthorized payments amount to at least $56,500.00.

39. Mr. Hansen charged approximately $101,499.04 dollars to his personal credit cards and then authorized "reimbursements" to himself from Talon's bank account.

40. Out of the $101,499.04 charged to Mr. Hansen's credit card, only 1 reimbursement was authorized and approved by Holden.

41. While some of the other charges totaling $85,128.04 appear to be for advertising or airfare, they were not authorized by Talon or Holden and the amounts charged and "reimbursed" were excessive, causing Talon further financial distress.

42. After August 2011, Mr. Hansen caused thousands of dollars to be withdrawn from Talon's account, and deposited into an Eagle account.

43. Upon information and belief, there was no legitimate business purpose for Talon's funds

5

to have been diverted into an Eagle after August 2011, as all the assets were sold and Eagle did not accrue liabilities.

44. Mr. Hansen, without the knowledge or consent of Talon or Holden, neglected and refused to pay to the Internal Revenue Service, Wisconsin Department of Revenue, and to the Wisconsin Support Collections Trust Fund, withholding taxes and income assignments withheld from Talon's employees' paychecks instead diverting such funds to himself and his wife.

45. Mr. Hansen's concealment of the financial distress of Talon and his diversion of funds noted above resulted in Holden's personal liability for trust fund taxes in the approximate amount of $156,683.60.

46. Mr. Hansen financed the funds diverted from Talon by misrepresenting the company's financial health and inducing Raymond Holden to personally guaranty a line of credit for Talon at Town Bank in the amount of $100,000.00 plus interest.

47. Debtor-Defendants only scheduled unsecured nonpriority claims are for creditors: Eagle, Talon, Raymond Holden and Gutglass, Erickson, Bonville & Larson.

48. Debtor-Defendants incurred the debts to Talon, and Holden through fraud and defalcation while acting in a fiduciary capacity, embezzlement and larceny.

49. The above described acts were done willfully and maliciously resulting in injury to Plaintiffs.

### I. 11 U.S.C. 523(a)(4): DEFALCATION AS A FIDUCIARY

50. The allegations in the preceding paragraphs are re-alleged and incorporated as though fully set forth herein.

51. Mr. Hansen was, at all times relevant, a "key employee" of Talon's operation despite the

minimal time required to fulfill his job duties acting as the company's accountant, and holding the titles of Secretary/Treasurer as well as serving on Talon's Board of Directors.

52. As such, Mr. Hansen was in a position of trust, and possessed control over and intimate knowledge of various key aspects of Talon's business, including, without limitation, the company's bank accounts, negotiable instruments, vendor contracts, and payroll.

53. By virtue of his employment with Talon, Mr. Hansen had access to the bank accounts and negotiable instruments of Talon, as well as to a stamp bearing the Holden's signature.

54. During the period of Holden's illness, Holden was not able to supervise Mr. Hansen on a day-to-day basis. Instead, he trusted Mr. Hansen to perform his job honestly and competently.

55. As such, Mr. Hansen owed a fiduciary duty and/or duty of loyalty to the company.

56. Mr. Hansen breached his fiduciary duty and/or duty of loyalty by engaging in the above-described conduct and placing the interests of himself and his wife ahead of Plaintiffs.

57. Mr. Hansen intentionally engaged in this substantial defalcation by conspiring to divert funds to which he and his wife were not entitled instead of to the appropriate entities, including but not limited to the WDOR and IRS.

58. The wrongful conduct on Mr. and Mrs. Hansen's caused damages sustained by Plaintiffs.

## II.   11 U.S.C. 523(a)(4): EMBEZZLEMENT

59. The allegations in the preceding paragraphs are re-alleged and incorporated as though fully set forth herein.

60. Upon information and belief, during the period of Holden's illness, Mr. Hansen intentionally used his access to Talon's funds to write checks, including writing paychecks to himself and to Mrs. Hansen for amounts not authorized, contrary to his

7

Case 15-02485-beh    Doc 1    Filed 10/16/15    Page 7 of 10

authority and without consent.

61. Upon information and belief, Mr. Hansen intended to convert said funds to his own use and that of Mrs. Hansen, and did so.

62. Upon information and belief, Mrs. Hansen and Mr. Hansen intended to permanently deprive Talon of said funds.

63. Said funds rightfully belong to Plaintiffs, but due to the above described acts are in the possession of the debtor-defendants.

64. Holden entrusted debtor-defendant Mr. Hansen to correctly appropriate said funds, during his illness, instead debtor defendant Mr. Hansen intended to defraud Plaintiffs by intentionally misappropriating said funds to himself and Mrs. Hansen.

65. The wrongful conduct on Mr. Hansen and Mrs. Hansen's part was a cause of the damages sustained by Holden.

### III. 11 U.S.C. 523(a)(4): LARCENY

66. The allegations in the preceding paragraphs are re-alleged and incorporated as though fully set forth herein.

67. Upon information and belief, defendants Mrs. Hansen and Mr. Hansen, intentionally took and wrongfully retained funds belonging to Talon without lawful authority and without consent.

68. Upon information and belief from approximately September, 2011 until July, 2012, while Holden was seriously ill, Mr. Hansen, without Talon's consent or that of Holden, conspired with his wife Mrs. Hansen and placed her on Talon's payroll. Despite Mrs. Hansen performing no work, Mr. Hansen wrote paychecks to her, to which she was not entitled, in the amount of $935 per biweekly pay period. Mrs. Hansen also received

health insurance benefits from Talon to which she was not entitled, and, following her removal from the Talon payroll, Mr. Hansen and Mary Hansen, acting in concert, made a fraudulent claim for unemployment compensation.

69. The wrongful conduct on Mr. Hansen and Mrs. Hansen's part was a cause of the damages sustained by Holden.

### IV. 11 U.S.C. 523(a)(6): WILLFUL AND MALICIOUS INJURY.

70. The allegations in the preceding paragraphs are re-alleged and incorporated as though fully set forth herein.

71. Upon information and belief, Mr. Hansen and Mrs. Hansen formed and operated a conspiracy to divert funds from Talon.

72. Upon information and belief, Mr. Hansen and Mrs. Hansen acted willfully maliciously to injure Talon's business for their own financial benefit.

73. Upon information and belief Mr. Hansen and Mary Hansen acted willfully and maliciously to injure Talon's business when they intentionally conspired to unilaterally place Mary Hansen on Talon's payroll.

74. Upon information and belief Mr. Hansen and Mrs. Hansen acted willfully and maliciously to injure Talon's business when they intentionally filed a fraudulent claim for unemployment compensation.

75. Upon information and belief Mr. and Mrs. Hansen acted willfully and maliciously to injure Talon and Holden when they intentionally paid themselves diverted funds instead of correctly allocating said funds to pay federal and state taxes.

76. The wrongful conduct on Mr. Hansen and Mrs. Hansen's part was a cause of the damages sustained by Holden.

**WHEREFORE** Plaintiffs, by their attorneys Gutglass, Erickson, Bonville, and Larson, demands judgment against Mr. Hansen and Mrs. Hansen as follows:

A. An Order disallowing Debtor's Discharge towards debts owed to Plaintiffs;

B. A determination that this debt owed to Plaintiff by Debtor- Defendants is non-dischargeable;

C. Adjudging the debtors to be indebted to Plaintiffs in an amount to be determined at trial;

D. Awarding to Plaintiffs costs and disbursements of this action, and

E. Such other and further relief as this Court deems just.

Dated this 16th day of October, 2015,

                                        GUTGLASS, ERICKSON, BONVILLE
                                              & LARSON, S.C.

                                        /s/ Lauren L. Wick
                                        Paul R. Erickson (#1003920)
                                        Lauren L. Wick (#1097578)
                                        Attorneys for Plaintiffs

P.O. ADDRESS:
735 North Water Street, Suite 1400
Milwaukee, WI 53202
ph: (414) 273-1144/fax: (414) 273-3821
paul.erickson@gebsc.com
lauren.wick@gebsc.com